**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **DAVID A. VALOIS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 13-3029-KHV** |
| | ) | |
| **COMMANDANT,** | ) | |
| **USDB—Fort Leavenworth** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

This matter is presently before the Court on David A. Valois' *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. #1). In his petition, Valois challenges the amount of good conduct time ("GCT") credit that will be administratively deducted from his sentence. The issues have been fully briefed and the Court finds that no hearing is necessary. For the reasons that follow, the Court denies Valois' petition for writ of habeas corpus.

I.

Valois, who was a member of the United States Air Force, was charged with murder by engaging in an act inherently dangerous to another and evincing a wanton disregard of human life in violation of Article 118(3) of the Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. § 918(3). Valois was tried by a military judge at a general court-martial from June 12-15, 2006. The evidence showed that on October 3, 2005, Valois repeatedly struck his infant son on the head after being unable to stop the child (A.V.) from crying. Valois' actions were severe enough that A.V. suffered debilitating injuries and died the next day after life

support was discontinued.  Valois pleaded guilty to a lesser-included offense of involuntary manslaughter, but the military judge found him guilty of the original charge.  He was sentenced to dismissal from the military service, forfeiture of all pay and allowances and 50 years of confinement.  Under a pretrial agreement, the convening authority reduced the confinement to 25 years.

Valois appealed to the United States Air Force Court of Criminal Appeals, which affirmed his conviction and sentence.  United States v. Valois, 2009 WL 1507981 (A.F.Ct.Crim.App. Mar. 31, 2009).  Valois filed a motion for reconsideration which was denied on April 30, 2009.   The Court of Appeals for the Armed Forces denied review on November 13, 2009.  United States v. Valois, 68 M.J. 333 (C.A.A.F 2009), reconsideration denied, 69 M.J. 52 (C.A.A.F. 2010).  Plaintiff filed a petition for writ of habeas corpus with the Air Force Court of Criminal Appeals, which denied it on June 30, 2010.  Plaintiff filed a petition for review, which the Court of Appeals for the Armed Forces denied on September 24, 2010.

On June 30, 2006, Valois was transferred to the United States Disciplinary Barracks ("USDB") in Fort Leavenworth, Kansas, where he is presently serving his sentence.   On May 11, 2010, Valois filed a claim for administrative relief with the Commandant of the USDB, contesting the amount of good time that was being credited against his sentence.  This request was denied on May 12, 2010.  Valois repeated the request on May 14, 2010, and it was again denied on May 26, 2010.  On June 17, 2010, Valois filed a complaint under Article 138 of the UCMJ on June 17, 2010, which was denied on August 5, 2010.  He filed additional Article 138 complaints on June 8 and 28, 2011, both of which were denied.  On September 12, 2012, the Air Force Court of Criminal Appeals denied his *pro se* Writ of Habeas Corpus without prejudice due

to lack of counsel.  Valois submitted a motion for reconsideration but on February 11, 2013, sought dismissal.  Four days later, on February 15, 2013, Valois filed the instant petition.

## II.

In his petition, Valois asserts two arguments.  First, he contends he is entitled to GCT credit of ten days rather than five days per month.  Specifically, he contends that the Secretary of the Air Force has the authority to determine the award of GCT, and that Air Force Joint Instruction ("AFJI") 31-215, which provides for GCT at the rate of ten days per month, controls. Valois argues that later amendments or modifications to AFJI 31-215 were either invalid or have expired.  Second, Valois argues that changes in GCT after his conviction constitute an *ex post facto* violation of the Constitution.

## III.

Under 28 U.S.C. § 2241(c)(3), a district court may grant habeas corpus relief when petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." Valois properly seeks relief pursuant to § 2241 to challenge the execution of his sentence.  See Davis v. Roberts, 425 F.3d 830, 833 (10th Cir. 2005).

Because Valois is proceeding *pro se*, the Court liberally construes his filings.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*); see also United States v. Pinson, 584 F.3d 972, 975 (10th Cir. 2009)("[W]e must construe [a *pro se* litigant's] arguments liberally; this rule of liberal construction stops, however, at the point at which we begin to serve as his advocate.").

IV.

The Court begins by briefly discussing the exhaustion requirements in cases involving military prisoners. The applicable standards for exhaustion were discussed in Huschak v. Gray, 642 F. Supp.2d 1268, 1274 (D. Kan. 2009), as follows:

> The Tenth Circuit discussed the general principles of exhaustion and waiver in Roberts v. Callahan, 321 F.3d 994, 995 (10th Cir.) cert. denied, 540 U.S. 973 (2003):
>
>> The federal civil courts have limited authority to review court-martial proceedings. Burns v. Wilson, 346 U.S. 137, 142, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953). If the grounds for relief that Petitioner raised in the district court were fully and fairly reviewed in the military courts, then the district court was proper in not considering those issues. See id.; see also Lips v. Commandant, United States Disciplinary Barracks, 997 F.2d 808, 811 (10th Cir.1993). Likewise, if a ground for relief was not raised in the military courts, then the district court must deem that ground waived. See Watson v. McCotter, 782 F.2d 143, 145 (10th Cir.1986). The only exception to the waiver rule is that a petitioner may obtain relief by showing cause and actual prejudice. See Lips, 997 F.2d at 812.

Under Roberts v. Callahan, 321 F.3d 994, 995 (10th Cir), cert. denied, 540 U.S. 973 (2003), "the court should not review petitioner's claims if these claims have received full and fair review by the military courts, or if petitioner waived the opportunity to present the claims to the military courts." Huschak, 642 F. Supp.2d at 1275 (footnote omitted). A habeas petitioner is not required to exhaust, however, if exhaustion would be futile. Wilson v. Jones, 430 F.3d 1113, 1118 (10th Cir. 2005), cert. denied, 549 U.S. 943 (2006).

Valois contends that he did not need to exhaust because exhaustion would have been futile since military courts have determined that they will not address collateral consequences of court-martial sentences, and GCT issues fall in that category. Respondent has not challenged that argument or raised an exhaustion objection. Accordingly, the Court may review Valois'

claims.  Huschak, 642 F. Supp.2d at 1280 n.14 (citing United States v. Woods, 888 F.2d 653,

654 (10th Cir. 1989), cert. denied, 494 U.S. 1006 (1990)).  Because respondent has not raised

failure to exhaust as a defense, the Court deems it waived and shall address the merits of Valois'

habeas corpus petition.

V.

The arguments asserted by Valois are related.  First, he contends that Congress has

authorized the Secretary of each military service group to establish military correctional facilities

and provide regulations for their operation.  From this, he reasons that the Secretary of the Air

Force controls the award of GCT.  Next, Valois contends that Air Force regulations, not those of

the Department of Defense ("DoD"), control his GCT.  He argues that DoD regulations, which

purportedly amended the Air Force regulations, are not valid because they expired and were not

properly activated again.  Finally, based upon these arguments, Valois contends that the less

generous GCT rate under the DoD regulations illegally increases his time in confinement in

violation of the Ex Post Facto Clause of the United States Constitution.

A.

The Court first examines the maze of GCT regulations that the Air Force and DoD have

issued over the last 50 years.  These regulations are not always uniform and their effective dates

and subsequent cancellations are often difficult to discern. The Honorable Richard D. Rogers has

previously explained the problem with military regulations on issues of parole and GCT:

> [T]he military regulations governing parole and good time for prisoners at the
> USDB are difficult to locate and decipher.  Piecemeal changes have been made
> numerous times; some are Department of Defense directives while others are
> Army and Air Force regulations.  Some contain disorganized provisions on the
> same subject, some are poorly written with seeming inconsistencies, and some
> subjects seem not to be adequately addressed.  These regulations are not in the
> Code of Federal Regulations or available to the court through normal research

5

channels.  Instead, the court must rely on excerpts selected by the parties and provided with the pleadings.

Young v. Nickels, 59 F. Supp.2d 1137, 1139 (D. Kan. 1999).

Here, respondent has provided a thorough look at the regulations that have existed over the years.  To his Answer and Report, respondent has attached over 800 pages.  With some trepidation, the Court enters the military labyrinth of regulations.

As noted by Valois, the Air Force and Army issued certain regulations concerning military sentences in 1964. Air Force Joint Instruction ("AFJI") 31-215 (also known as Army Regulation 633-30), Military Sentences to Confinement (Nov. 6, 1964). These regulations were updated on March 28, 1989.  The purpose of AFJI 31-215 was "to prescribe[] procedures for the computation of sentences to confinement of persons subject to the Uniform Code of Military Justice serving sentences in the custody of the Department of the Army or Air Force." Id. ¶ 1a. These regulations credited GCT at a rate of "[f]ive days for each month for the first 12 months of the sentence and 10 days for each succeeding month of the sentence if the sentence, other than life, exceeds 1 year." Id. ¶ 10b.

In 2001, the DoD (DoD) issued regulations that applied to all Military Departments and other organizational entities within DoD.  Department of Defense Instruction ("DoDI") 1325.7, Administration of Military Correctional Facilities and Clemency and Parole Authority (July 17, 2001).  The regulations obligated the Secretaries of the Military Departments to ensure that their departments complied with the DoDI. Id. ¶ 5.2.  This version of DoDI 1325.7 did not define GCT, but it provided graduated degrees of GCT credit based on the length of prisoner sentences. Id. ¶ E26.1.  For sentences of ten years or more, prisoners would receive ten days of credit for each month of the sentence served. Id. ¶ E26.1.5.  Thus, DoDI 1325.7 allowed the military services "to calculate an anticipated release date at the beginning of a prisoner's

sentence to confinement based on the regular good conduct time that could be earned for the entire period of the sentence." Id. ¶ E26.1.2. Prisoners earned GCT on a monthly basis but the facility commander could forfeit or suspend the GCT if the prisoner engaged in misconduct or violated regulations. Id. ¶ 6.9.3.5. The facility commander could restore GCT or waive if the prisoner accepted parole. Id. ¶ 6.9.5 and ¶ 6.17.9.4.

In 2004, the Air Force issued additional regulations concerning GCT. Air Force Instruction (AFI) 31-205, The Air Force Corrections System (April 7, 2004). These regulations governed confinement and sentences in the Air Force. In the preamble to AFI 31-205, the Air Force acknowledged that it implemented DoDI 1325.7, as follows:

> This instruction implements Air Force Policy Directive (AFPD) 31-2, Law Enforcement, Department of Defense (DoD) Directive 1325.4, Confinement of Military Prisoners and Administration of Military Correction Programs and Facilities, August 17, 2001 and DoD Instruction 1325.7, Administration of Military Correctional Facilities and Clemency and Parole Authority, July 17, 2001.

In these regulations, the Air Force deferred to DoDI 1325.7 on GCT, as follows:

> The accurate computation of inmate sentences ensures proper administration. It is also an essential element in protecting inmate legal rights. The confinement officer or designated corrections staff member computes sentence and Good Conduct Time (GCT) according to DoDI 1325.7, Administration of Military Correctional Facilities and Clemency and Parole Authority and AFJI 31-215, Military Sentences to Confinement.

Id. ¶ 5.7.

In June of 2004, the Under Secretary of Defense for Personnel and Readiness issued a "directive-type" memorandum ("DTM") amending DoDI 1325.7. Change to DoD Policy on Abatement of Sentences to Confinement (June 23, 2004). The DTM defined GCT as "a deduction from a prisoner's release date for good conduct and faithful observance of all facility rules and regulations." Id. ¶ A2. Under the DTM, GCT would "be awarded at a rate of 5 days

for each month of confinement . . . regardless of sentence or multiple sentence length." Id. ¶ A2.2.1. This change applied only to findings of guilt for offenses which occurred after October 1, 2004, when the DTM became effective. Id. ¶ A2.2.2. The DTM also specified that GCT and other forms of abatement were dependent on an acceptable release plan and the prisoner's full cooperation with mandatory supervised release policy. Id. ¶ A6.1. In addition, the DTM provided that violations of institutional rules or the UCMJ could result in forfeiture of GCT. Id. ¶ A7.

On September 17, 2004, the Under Secretary released an addendum to the DTM. Clarification of DoD Policy on Abatement of Sentences to Confinement (September 17, 2004). This document was described as a "restatement" of the DTM dated June 23, 2004, with clarification only on paragraph A2.2.2. Id. The effective date was the same as the earlier DTM: October 1, 2004. Id. The document stated that the changes would be incorporated in the next version of DoDI 1325.7. Id. Amended paragraph A2.2.2 stated that: "[w]ith respect to sentences adjudged prior to January 1, 2005, GCT shall be awarded at the rates specified in DoD Instruction 1325.7, enclosure 26." Id. ¶ A2.2.2. Thus, sentences adjudged prior to January 1, 2005 of the DTMs would receive the former GCT rate. Id.

On March 11, 2013, the DoD released another DoDI that reissued the older DoDI 1325.7. DoDI 1325.07, Administration of Military Correctional Facilities and Clemency and Parole Authority (March 11, 2013). This new regulation specified that  among other things, it "[r]evise[d] established policy on the award of good conduct time (GCT) and abatement time for other purposes to emphasize performance and affirmative rehabilitative steps taken by prisoners." Id. ¶ 1.e. The new regulation also superseded and cancelled the two Under Secretary of Defense Memoranda issued on June 23 and September 17, 2004, ¶ 1.g, but continued the

change that prisoners whose sentences were adjudged after December 31, 2004 would earn GCT at a rate of five days per month. Id. Enclosure 2, Appendix 3 ¶ 2.b.(2).

When the GCT credit rate was changed in June of 2004, Department of Defense Directive (DoDD) 5025.1 described DTMs as:

> [a] memorandum issued by the Secretary or Deputy Secretary of Defense or OSD Principal Staff Assistants (PSAs), that because of time constraints, cannot be published in the DoD Directives System at the time of signature. A DoD issuance will be issued within 180 days of signature of the memorandum.

DoDD 5025.1, DoD Directive System ¶ 3.2. (July 27, 2000).   Before DoD reissued the confinement DTM on September 17, 2004, it further modified the directive system for DTMs by ordering that they "remain in effect until the information is incorporated into a permanent DOD issuance, which shall be issued as soon as practical."   DoDD 5025.1, DoD Directive System ¶ 3.2 (July 14, 2004).

Pursuant to DoDD 5025.1, the DoD also released a guidance manual explaining how DoD Instructions and other regulations were to be produced.  DoD 5025.1-M, DoD Directive System Procedures (March 5, 2008).   This document further explained the procedures concerning DTMs as follows:

> C1.2.4. DoD Directive-Type Memorandums
> C1.2.4.1. These are memorandums issued by the Secretary of Defense, the Deputy Secretary of Defense, or the OSD [Office of the Secretary of Defense] Principal Staff Assistants (PSAs) that are not published as a DoD issuance because of time constraints. The Secretary or Deputy Secretary of Defense signs directive-type memorandums that promulgate POLICY. OSD PSAs sign directive-type memorandums that promulgate PROCEDURES for implementing policy documents.
> C1.2.4.2. The office of primary responsibility shall convert a directive-type memorandum into a DoD issuance within 180 days from the date of signature. A copy of the signed memo shall be forwarded to the Director, Directives and Records Division, WHS [Washington Headquarters Services]. . . .

Id. ¶ C1.2.4. The DoD manual also directs OSD Principal Staff Assistants to "[c]onvert directive-type memorandums into DoD issuances within 180 days and, when applicable, cancel those memorandums." Id. ¶ C1.4.2.6.

On October 28, 2007, DoD converted DoDI 5025.1 and renumbered it DoDI 5025.01, which it further updated on July 1, 2010. DoDI 5025.02, DoD Directive System (Oct. 28, 2007). The DoD Directives System again modified policies for issuing new DTMs as follows:

> DTMs shall be issued ONLY for time-sensitive actions that affect current issuances or that will become DOD issuances, and ONLY when time constraints prevent publishing a new issuance or a change to an existing DoD issuance. DTMs shall not be used to permanently change or supplement existing issuances. They shall be effective for no more than 180 days from the date signed, unless an extension is approved by the DA&M [Director of Administration and Management], during which time they shall be incorporated into an existing DoD issuance, converted to a new DoD issuance, reissued, or cancelled.

Id. ¶ 4.d.13

Paragraph 5.d (modified to ¶ 5.c. in the 2010 revisions) addressed the status of DTMs issued before October 28, 2007, as follows:

> Review and Currency of DTMs. The Heads of the OSD Components shall incorporate all DTMs into existing DoD issuances or convert them to new DoD issuances, or shall reissue or cancel them, prior to their expiration 180 days from the date of their publication. For DTMs issued prior to the date of this Instruction, the originating Components shall take the appropriate actions within 180 days of this Instruction.

Id. ¶ 5.d.

On July 1, 2010, DoDI 5025.1 was changed to read as follows:

> For DTMs issued prior to the date of this Instruction, the originating Components shall take the appropriate actions within 18 months from the date of this change, DTMs not incorporated, converted, or cancelled by the originating Components by January 1, 2012, will be processed for cancellation by the DA&M in accordance with the procedures in this issuance unless an extension to the DTM has been granted by the DA&M at the request of the originating Component.

DoDI 5025.01, DoD Directive System, Enclosure 3, ¶ 5.c (July 1, 2010).

On September 26, 2012, the DoD issued the current version of DoDI 5025.01.

DoDI 5025.01, <u>DoD Directive System</u> (Sept. 26, 2012). With regard to DTM policy, it explains:

> DTM Currency. The OSD Component heads:
> (1) Will, prior to the DTM's expiration (6 months from  the publication date):
> (a) Incorporate the DTM into an existing DoDD, DoDI, AI, or DoDM;
> (b) Convert the DTM to a new DoDD, DoDI, AI, or DoDM; or
> (c) Cancel the DTM.
> (2) May request DA&M approval of an extension for a DTM and must provide compelling justification to support the extension.
> (3) Must prepare and process a new DTM that incorporates and cancels the existing DTM if the extension request is disapproved.
> (4) May, if necessary, request that administrative changes be made to DTMs. The DA&M may allow substantive changes, in special circumstances and when the reasons for making the changes meet the standards for a critical comment as defined in the Glossary.

<u>Id</u>. Enclosure 4, ¶ 1.b. The current version of DoDI 5025.01 does not provide for automatic

expiration of DTMs, but only requires that one of four options, including discretionary

cancelation, be taken within six months. The DoDI now provides that all DoD Issuances "expire

10 years after their publication date" if they have not been reissued, cancelled, or granted an

extension by the DA&M. <u>Id</u>. ¶ 3.c.(2).

### B.

With that background, the Court turns to Valois' initial argument that the Secretary of the

Air Force, not the DoD, has  authority to award GCT and other acts of clemency.  The DoD is an

executive department of the United States.  10 U.S.C. § 111(a).  It is composed of the military

Departments and Services, and includes the Department of the Air Force.  10 U.S.C. § 111(b).

The Secretary of the Air Force is the head of the Department of the Air Force.

10 U.S.C. § 8013(a)(1).  The Department of the Air Force operates under the ultimate authority,

direction and control of the Secretary of Defense.  10 U.S.C. § 8011; <u>see</u> <u>Schwalier v. Hagel</u>, 776

F.3d 832, 837 (Fed. Cir. 2015)(Air Force is subcomponent of DoD).   The Military Service

secretaries are to cooperate fully with the Office of the Secretary of Defense to achieve efficient administration of the DoD and effectively execute the authority, direction and control of the Secretary of Defense.  10 U.S.C. § 131(d).

Congress has empowered the military Secretaries to establish military correctional facilities for confinement of those who violate the UCMJ.  See 10 U.S.C. § 951(a).  Congress allows the Secretaries to prescribe regulations for those facilities.  See 10 U.S.C. § 951(c).  The statutory provisions concerning military correctional facilities make no mention of GCT. Congress has allowed the Secretaries to create a parole system, 10 U.S.C. § 952, and a system for the remission or suspension of sentences, restoration to duty, and enlistment of discharged offenders. 10 U.S.C. § 953. Neither of these provisions mentions GCT.

Initially, the Court notes that Valois has misread the relationship between the Air Force and the DoD.  From the statutory hierarchy, it is apparent that the DoD is superior to the Department of Air Force.  Thus, as a matter of law, the Air Force is obligated to follow the policies and procedures of the DoD.

Even if some powers may be expressly reserved to the Military Service secretaries, Valois has not pointed to anything which indicates that GCT policy is among them.  As previously mentioned, Congress has provided authority for the military corrections system, but this is not an express reservation of powers to the Military Service secretaries.  Valois relies upon 10 U.S.C. § 951(c), but this subsection only requires a Secretary to establish an officer in command of correctional facilities, who should follow "regulations to be prescribed by the Secretary concerned."  This section does not prohibit the DoD from establishing superior corrections policy which the Military Service secretaries would be required to implement through regulations.

As evidence that DoD cannot set GCT policy, Valois also points to 10 U.S.C. § 874. This section, which is Article 74 of the UCMJ, provides in part that the Secretary of the Air Force or his designee "may remit or suspend any part or amount of the unexecuted part of any sentence."  This section, along with 10 U.S.C. § 953, vests the Secretary of the Air Force with the authority of clemency review.  Guthrie v. Gray, 2013 WL 1810838 at *3 (N.D. Fla. Mar. 19, 2013).  Valois has concluded that GCT is a form of clemency, but the Court finds no support for such a position.  The Secretary's clemency power is an affirmative power that can be taken to reduce a sentence.  GCT is a passive administrative action that is built into an offender's time in prison; technically, it does not reduce a sentence but only allows early release if behavior warrants it.  These differences are explained in the definitions section of AFI 31-205, as follows:

> **clemency**--Under Article 74, UCMJ, the act of an authorized individual or body modifying a court-martial sentence by suspension or remission of any unexecuted portion of the sentence.  Under Article 74(b), UCMJ, the SAF [Secretary of the Air Force], may for good cause substitute an administrative discharge for a dismissal or punitive discharge.
>
> .        .        .        .        .
>
> **good time credit**--That time which is credited towards an inmate's sentence to confinement that is allowed according to AR 633-30 (AFJI 31-215), Military Sentences to Confinement and this AFI.

AFI 31-205, Attachment 1.

AFI 31-205 also maintains clemency and GCT in separate parts of the Instruction at Chapter 10 (Clemency and Parole) and Chapter 5 (Administration and Management—Sentence Computation), respectively.  Id. Chapter 10; ¶ 5.7.1.2.  Thus, the Air Force considers GCT and clemency to be separate concepts.  As a result, the Secretary's powers under 10 U.S.C. § 874 do not apply here.

Finally, even if the DoD did somehow usurp the authority of the Air Force Secretary, the Secretary adopted DoD's GCT policy by deferring to it in AFI 31-205.  AFI 31-205, which the

Air Force adopted in 2004, expressly pointed to DoDI 1325.7 for GCT calculations.  Thus the Air Force adopted the DoD's policy on GCT.  As noted in DoDI 1325.7, the DoD established a policy for GCT of five days per month.  Nothing in the record suggests that the Air Force amended or removed the deferral to DoDI 1325.7.   Air Force policy is clear:  it has adopted the DoD policy on GCT established in DoDI 1325.7.

Valois has suggested that the Air Force deferral to DoDI 1327.7 in AFI 31-205 presents a conflict with AFJI 31-215.  He points to the following language as support for this position:

> The confinement officer or designated corrections staff member computes sentence and Good Conduct Time (GCT) according to DoDI 1325.7, Administration of Military Correctional Facilities and Clemency and Parole Authority and AFJI 31-215, Military Sentences to Confinement.

AFI 31-205 ¶ 5.7.

In essence, Valois argues that the Air Force adopted the GCT policy contained in both AFJI 31-215 and DoDI 1325.7.  The Court cannot agree.  AFI 31-205 specifically indicates that GCT will be set as follows: "For sentences over one year, refer to DoDI 1325.7, E261.1." AFI 31-205 at ¶5.7.1.2.1.  The Air Force published this AFI in 2004, amended it in 2007, and certified it as current on April 28, 2011. Valois has failed to show that the Air Force ever challenged the DoD's policy of five days per month for sentences over one year.  The Air Force has had ample time to amend or remove the deferral to DoDI 1325.7, but the record contains no evidence that it has done so.  Therefore, the Court finds that the Air Force policy is in accord with DoDI 1325.7.

## C.

In 2004, the DoD Under Secretary for Personnel and Readiness issued a DTM which changed the GCT policy from ten days a month to five days a month.  Valois contends that the 2004 DTM is invalid for several reasons. Valois initially asserts that the Under Secretary lacked

authority to issue the 2004 DTM and its later addendum.  Valois next contends that the 2004

DTM was not continuously in effect and that on January 1, 2012, DoDI 5025.01 rendered it null.

In examining the DoD regulations, the Court applies the deferential framework provided

by Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).  In

Chevron, the Supreme Court stated, as follows:

> The power of an administrative agency to administer a congressionally
> created . . . program necessarily requires the formulation of policy and the making
> of rules to fill any gap left, implicitly or explicitly, by Congress. If congress has
> explicitly left a gap for the agency to fill, there is an express delegation of
> authority to the agency to elucidate a specific provision of the statute by
> regulation. Such legislative regulations are given controlling weight unless they
> are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the
> legislative delegation to an agency on a particular question is implicit rather than
> explicit. In such a case, a court may not substitute its own construction of a
> statutory provision for a reasonable interpretation made by the administrator of an
> agency.

467 U.S. at 843–44 (internal quotations and citations omitted); see also Thomas Jefferson Univ.

v. Shalala, 512 U.S. 504, 512, (1994)("We must give substantial deference to an agency's

interpretation of its own regulations. . . .[T]he agency's interpretation must be given controlling

weight unless it is plainly erroneous or inconsistent with the regulation.") (internal quotations

omitted).

Valois argues that the Under Secretary of Defense for Personnel and Readiness lacked

authority to issue the DTM that amended DoDI 1325.7 on June 23, 2004.  The Court disagrees.

As previously noted, on March 5, 2008, the DoD issued DoD 5025.1-M.  That document

established that DTMs may be signed by OSD Principal Staff Assistants.  5025.1-M at ¶

C1.2.4.1.  In accord with prior military policy, it further indicated that Under Secretaries of

Defense are Principle Staff Assistants.  Id. ¶ C1.2.12;  DoDD 5124.2, Under Secretary of

Defense for Personnel and Readiness (Oct. 31, 1994)(superseded by DoDD 5124.02, Under

<u>Secretary of Defense for Personnel and Readiness</u> at ¶ 4 and ¶ 6.2 (Feb. 11, 2006))(Under Secretary has broad authority to develop policies, plans and programs for armed forces and develop instructions, publications and DTMs related to his responsibilities).  These regulations are in accord with the statutory authority which Congress granted to the Secretary of Defense. <u>See</u> 10 U.S.C. § 113(d)("Unless specifically prohibited by law, the Secretary may, without being relieved of his responsibility, perform any of his functions or duties, or exercise any of his powers through, or with the aid of, such persons in, or organizations of, the Department of Defense as he may designate.").  Thus, on June 23, 2004, the Under Secretary for Personnel and Readiness had the authority to issue the DTM on June 23, 2004 that amended DoDI 1325.7 and provided GCT at a rate of five days for each month of confinement.

The Court next considers Valois' argument that the DTMs issued on June 23 and September 17, 2004 were not continuously in effect after his conviction and sentence and were rendered null on January 1, 2012.  Valois argues that the military failed to follows its own regulations concerning these DTMs in the years following their issuance.  Specifically, he contends that  (1) the DTMs issued on June 23 and September 17, 2004 were not valid because they were not incorporated into a DoD issuance within 180 days, as required by DoD 5025.1-M; (2) the DoDI 5025.01 issued October 28, 2007 was invalid because no action was taken on the DTMs until July 1, 2010, well over 180 days after the issuance of DoDI 5025.01; (3) the DTM issued on January 21, 2010 was not valid on July 21, 2010 because 180 days had passed with no action taken; (4) the DTM issued on July 1, 2010 was no longer valid because no action was taken on it within 18 months after it was issued; and (5) all DTMs issued prior to 2007 were invalid because no action had been taken on them prior to January 1, 2012.

Even though the DTMs passed the point where they should have been formally updated, the Court is not persuaded that they expired.  The DoD did not cancel or amend the 2004 DTM adjusting GCT credit until 2013.  At that time, the new DoDI 1325.07 replaced both the DTMs and DoDI 1325.7. This new regulation maintained that prisoners whose offenses occurred after December 31, 2004 would be credited five days of GCT per month regardless of sentence length.  DoDI 1327.07 at Enclosure 2, Appendix 3, ¶ 2.b.(2).

The military's regulatory scheme did not void DTMs after 180 days.  Rather, as a matter of administrative procedure, it established a policy that DTMs be incorporated into regulations to assist in internally updating DoD issuances.

Amendments to DoDI 1325.7 and changes to the DoDD system did not void the 2004 DTM.  Although certain actions could have occurred, such as incorporation into an existing DoD issuance, conversion to new DoD issuance, reissuance or cancellation, these were not automatic.  The regulations directed the originating components to take action on old DTMs through incorporation, reissuance or cancellation within a certain period of time.  It does not follow that lack of action automatically cancelled the regulations.

Courts have considered this issue in the context of statutes that do not specify consequences for agency noncompliance with statutory deadlines.  Brock v. Pierce County, 476 U.S. 253, 260 (1986) established the relevant principle, as follows: if a statute does not specify a consequence for agency noncompliance with statutory deadlines, federal courts will not ordinarily impose their own coercive sanctions.  See also United States v. James Daniel Good Real Property, 510 U.S. 43, 63-64 (1993); United States v. Montalvo-Murillo, 495 U.S. 711, 718 (1990); Gottlieb v. Peña, 41 F.3d 730, 733-737 (D.C. Cir. 1994).

This principle applies here.  Since the early regulations did not specify any consequence for DoD's failure to act, the Court will not impose a sanction.  The regulations cited by Valois do not specify that DoD's failure to meet the deadlines would end its authority to administer GCT. Failure to meet a regulatory time limit does not mean that corollary punitive sanctions must exist.

The current DoD Directives Program is illustrative. It informs originators that DTMs will be processed for cancellation if no action is taken within 18 months from the date of the change. DoDI 5025.01, Change 2 at 13 (July 1, 2010).  This change and the allotment of time would be unnecessary if all prior DTMs had already been automatically cancelled at a certain time after issuance.

In sum, the military's view that the 2004 DTM is still valid is a reasonable interpretation by the DoD within its statutory authority to administer military correctional facilities.  Since this interpretation is not clearly erroneous or arbitrary, this Court finds that the 2004 DTM and the Air Force's deference to DoDI 1325.7, now DoDI 1325.07, remains valid and that any potential GCT for Valois is limited to five days per month.

D.

Finally, the Court considers Valois' *ex post facto* argument.  He contends that application of the less generous DoD rate for GCT illegally increases his time in confinement in violation of the *Ex Post Facto* Clause of the United States Constitution.

The *Ex Post Facto* Clause prohibits laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." California Dept. of Corrections v. Morales, 514 U.S. 499, 504 (1995). To violate the *Ex Post Facto* Clause, a retroactive change in policy must create a sufficient risk that a prisoner's punishment will be increased. Id. Retroactive changes to regulations that govern the accumulation of good time credit can work a violation if they create a

sufficient risk of increasing the length of a prisoner's incarceration.  See Lynce v. Mathis, 519 U.S. 433, 446-47 (1997).

Valois' conviction occurred in 2006.  The 2004 DTM changed the GCT rate prior to the date of his offense.  The change became effective on January 1, 2005, many months before Valois' offense, conviction and sentence.   Moreover, the changes to DoDI 5025.1 and the DoD Directives System did not change the validity of the 2004 DTM, alter the GCT rate or impact Valois' GCT calculations.   In addition, the Air Force's change in reliance on AFJI 31-215 occurred on April 7, 2004, when it updated AFI 31-205 to reflect its dependence on DoDI 1325.7 for GCT calculations on sentences over one year.  The Air Force never rejected its adoption of DoDI 1325.7 even after the DTMs and subsequent changes to DoD 1325.07.  All changes to the computation of GCT occurred well before Valois' offense and have remained consistent.

It should also be noted that Valois never had a "liberty interest" in the more favorable GCT rate in AFJI 31-215; that rate was defunct when the 2004 DTM issued. AFI 31-205 is unambiguously clear that GCT rates were to be determined pursuant to DoDI 1325.7, not AFJI 31-215. The deference to the DoDI became manifest when AFI 31-205 was released in 2004, well before Valois' offense.  Valois asserts that he relied upon AFJI 31-215 in making his pretrial agreement. If so, he or his counsel should have been aware of the Air Force's decision to calculate sentences in accordance with DoDI 1325.7. See United States v. Griffitts, 2011 WL 4985719 at * 4 (N.M.Ct.Crim.App. Oct. 20, 2011)(defense counsel's mistaken reliance on outdated Navy instruction which awarded ten days GCT credit did not lead to improvident plea and was not ineffective assistance of counsel).

Valois' *ex post facto* argument relies in part on the most recent change to the DoD Directives system, which occurred on July 27, 2010. Based on the DoDI issued July 1, 2010, he

contends that the 2004 DTM became null on January 1, 2012, when it was not renewed within the 18 months. The change on July 27, 2010 was to the Department of Defense Directives System, an administrative order that did not purport to address or change the computation of GCT for prisoners. DoDI 5025.1, Change 2 at 1 (July 1, 2010). The change on July 1, 2010 did not enact new regulations concerning GCT; rather, it reiterated that DTMs issued prior to 2007 were effective until cancelled, and granted originators of DTMs additional time to incorporate DTMs into existing orders before cancellation. See DoDI 5025.1, Change 2 at 13 (July 1, 2010). This document did not change Valois' GCT calculations.

Valois' reliance upon United States v. Orzechowski, 65 M.J. 538 (N.M.C.C.A. 2006), is misplaced.  In Orzechowski, the United States Navy-Marine Corps Court of Criminal Appeals held that a Navy regulation promulgating new, less-generous GCT credits to petitioner's post-hearing confinement violated the *Ex Post Facto* Clause.   Orzechowski, 65 M.J. at 540. Orzechowski, however, is distinguishable.

Orzechowski was convicted in a general court-martial in 2001.  Id. at 538.  He was sentenced to a term of confinement for 15 years.  Id.  The convening authority approved the sentence, but suspended all confinement in excess of 13 years.  Id.   In January of 2005, the United States Navy-Marine Corps Court of Criminal Appeals affirmed his conviction but after finding that the government had breached its pretrial agreement,  set aside petitioner's sentence and ordered rehearing.  Id. at 538-39.  On July 8, 2005, Orzechowski was resentenced to confinement for ten years.  Id. at 539.  The convening authority  approved this sentence on February 5, 2006, but suspended all confinement in excess of eight years.  Id.

On appeal, the United States Navy-Marine Corps Court of Criminal Appeals considered the DTM issued on September 17, 2004 that changed the award of GCT to five days per month

for all sentences.  Id. at 538.  It noted that the DTM also provided that: "[i]f a sentence is later reduced by the convening authority, as a result of appellate action, or due to a grant of clemency, the prisoner's release date shall be recomputed based on the new sentence."  Id.  The court further noted, however, as follows:  "The new policy does not state whether the old rules or the new rules for GCT should be applied when the original sentence was adjudged prior to 1 January 2005 and the reduced sentence was adjudged after that date."  Id.

Valois' situation differs from Orzechowski due to the timing of the sentences.  Here, the regulations were in effect before Valois committed his offense, and before his conviction and sentence.  In Orzechowski, the regulations were enacted after the petitioner's offenses and original trial.  Id. at 540.  The new GCT rules, therefore, increased his time in prison.  Id. Orzechowski was entitled to relief under the *Ex Post Facto* Clause, but Valois is not so entitled.

In his Traverse (Doc. #12), Valois for the first time contends that at the time of his original sentencing, he did not have fair notice of the changes in the DoD confinement policies. In his initial petition, Valois made no such claim.  The Court shall not address this issue.  Errors first raised in the traverse will not normally be considered.  See Vanderlinden v. Koerner, 2006 WL 1713929 at * 5 (D. Kan. June 21, 2006)(citing Loggins v. Hannigan, 45 F.App'x 846, 849 (10th Cir. 2002)("We will not consider petitioner's argument that forcing the wife/victim to her car was insufficient to support the kidnapping charge as this issue was first raised in petitioner's traverse to respondents' answer to habeas petition.").

## VI.

The Court has carefully examined all of petitioner's arguments and determined that he is not entitled to relief under 28 U.S.C. § 2241.  Accordingly, his Petition for Writ of Habeas Corpus is hereby denied and dismissed.

**IT IS THEREFORE ORDERED** that Valois' pro se <u>Petition for Writ of Habeas Corpus</u>

(Doc. #1) be hereby **DENIED** and **DISMISSED**.

**IT IS FURTHER ORDERED** that Valois' Motion for Timely Judgment (Doc. #15) be

hereby **DENIED** as moot.

**IT IS SO ORDERED.**

Dated this  _7th_  day of October, 2015, at Kansas City, Kansas.


  _s/ Kathryn H. Vratil_
KATHRYN H. VRATIL
United States District Judge